Stephen W. Rupp, #2824
Mark C. Rose, #13855
**McKAY, BURTON & THURMAN, P.C.**
Gateway Tower West
15 West South Temple, Suite 1000
Salt Lake City, Utah 84101
Telephone: (801) 521-4135
Facsimile: (801) 521-4252
E-mail: mrose@mbt-law.com
*Attorneys for Trustee Stephen W. Rupp*

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>TERESA LYNN PEARSON,<br><br>Debtor. | Bankruptcy No. 13-31960 RKM<br>(Chapter 7) |
| STEPHEN W. RUPP, Chapter 7 Trustee,<br><br>Plaintiff,<br><br>vs.<br><br>TERESA LYNN PEARSON,<br><br>Defendant. | Adversary Proceeding No. 14-02020<br><br>Judge R. Kimball Mosier<br><br>**FILED ELECTRONICALLY** |

### C O M P L A I N T

Plaintiff Stephen W. Rupp, as the Chapter 7 bankruptcy trustee in the above-captioned bankruptcy case, hereby complains and alleges against Defendant Teresa Lynn Pearson as follows:

1

## PARTIES

1.      Plaintiff Stephen W. Rupp ("Plaintiff" or "Trustee") is the trustee duly appointed to Defendant Teresa Lynn Pearson's Chapter 7 bankruptcy estate in bankruptcy case 13-31960.

2.      Defendant Teresa Lynn Pearson ("Defendant" or "Debtor") is the debtor in the above-captioned bankruptcy case and is resident of Salt Lake County, State of Utah.

## JURISDICTION AND VENUE

3.      The jurisdiction of this Court is properly invoked under 28 U.S.C. §157 and §1334 and by General Order of Reference (DUCivR 83-7.1) from the United States District Court for the District of Utah.

4.      This is a core proceeding, as defined by 28 U.S.C. §157(b)(2), and arises under Title 11 of the United States Code (the "Bankruptcy Code") and relates to Debtors' Chapter 7 bankruptcy case. The matter is also a core proceeding under 28 U.S.C. §157(b), as this is a complaint for revocation and denial of Debtors' discharge pursuant to 11 U.S.C. §727(d).

5.      Venue is proper in the Central Division for the District of Utah as Defendant resides in this district.

## GENERAL ALLEGATIONS

6.      On September 15, 1993, Defendant, along with her husband, Shon Eric Pearson, filed a voluntary petition for relief under Chapter 13 of the bankruptcy code (the "1993 Bankruptcy Case").

7.      On March 14, 1996, the 1993 Bankruptcy Case was dismissed.

8.      On April 4, 1996, Defendant, along with her husband, Shon Eric Pearson, filed another voluntary petition for relief under Chapter 13 of the bankruptcy code (the "1996 Bankruptcy Case").

9.      On May 20, 1997, the 1996 Bankruptcy Case was dismissed.

10.     On October 30, 1997, Defendant filed a voluntary petition for relief under Chapter 7 of the bankruptcy code (the "1997 Bankruptcy Case").

11.     On February 5, 1998, Defendant received a Chapter 7 discharge in the 1997 Bankruptcy Case.

12.     On November 26, 2002, Defendant, along with her husband, Shon Eric Pearson, filed another voluntary petition for relief under Chapter 13 of the bankruptcy code (the "2002 Bankruptcy Case").

13.     On May 28, 2003, the 2002 Bankruptcy Case was dismissed.

14.     On June 6, 2003, Defendant, along with her husband, Shon Eric Pearson, filed another voluntary petition for relief under Chapter 13 of the bankruptcy code (the "2003 Bankruptcy Case").

15.     On July 15, 2005, the 2003 Bankruptcy Case was dismissed for non-payment.

16.     On August 12, 2005, Defendant, along with her husband, Shon Eric Pearson, filed another voluntary petition for relief under Chapter 13 of the bankruptcy code (the "First 2005 Bankruptcy Case").

17.     On October 16, 2005, while the First 2005 Bankruptcy Case was still pending, Defendant, along with her husband, Shon Eric Pearson, filed a voluntary petition for relief under Chapter 7 of the bankruptcy code (the "Second 2005 Bankruptcy Case").

18.     On November 14, 2005, the First 2005 Bankruptcy Case was dismissed.

19.     On December 1, 2006, Defendant and Shon Eric Pearson received a Chapter 7 discharge in the Second 2005 Bankruptcy Case.

20.     On April 28, 2008, the Second 2005 Bankruptcy Case was closed.

21.     On October 30, 2012, Defendant filed a voluntary petition for relief under Chapter 13 of the bankruptcy code (the "2012 Bankruptcy Case").

22.     On October 31, 2012, the Defendant filed a Chapter 13 plan in the 2012 Bankruptcy Case in which Defendant proposed plan payments, including a contribution of her federal and state tax refunds for the year 2012 to the extent that the refunds exceeded "$1,000.00 or $2,000.00 if allowed under applicable law."  *See* Chapter 13 Plan, attached hereto as Exhibit A and incorporated herein by this reference.

23.     Based on the petition date of the 2012 Bankruptcy Case, approximately 10/12ths of Defendant's 2012 tax refunds was property of Defendant's Chapter 13 bankruptcy estate.

24.     On February 20, 2013, an order confirming Defendant's Chapter 13 plan was entered in the 2012 Bankruptcy Case (the "Confirmation Order").  *See* Confirmation Order, attached hereto as Exhibit B and incorporated herein by this reference.

25.      The Confirmation Order provided as follows:

"In addition to the monthly Plan Payments required above, the Debtor shall also pay into the plan the total amount of yearly state and federal tax refunds that in the aggregate exceed $1,000. If such tax refund includes amounts from the Earned Income Tax Credit (EITC) and/or the Additional Child Tax Credit (ACTC), Debtor may retain up to a maximum of $2,000 of the tax refund based on the following formula: the first $1,000 as provided above, plus the combined amount of the EIC and ACTC up to an additional $1,000 (maximum retained tax refund cannot exceed $2,000) (hereinafter "Tax Refunds"). However, the Debtor is not obligated to pay into the Plan tax refunds that have been properly offset by a taxing authority. This requirement applies to all tax refunds that the Debtor is entitled to receive during the three-year period starting with the petition date (e.g., tax returns for tax years 2012 through 2014)[.]"

26.     The tax refunds to be contributed specifically included Defendant's 2012 tax refunds.

27.     In or about April 2013, Defendant received her 2012 federal tax refund in the amount of $4,829.00 (the "Federal Refund").

28.     In contravention of the Confirmation Order, Defendant did not pay to the Chapter 13 Trustee or contribute any portion of her 2012 tax refunds to her Chapter 13 plan.

29.     Instead, Defendant received and converted to her own use and benefit the Federal Refund contrary to the Confirmation Order.

30.     Defendant knowingly and willing spent the whole of the Federal Refund on personal, non-exempt items for her sole use and benefit.

31.     Defendant is not in possession of any part of the Federal Refund because she spent the Federal Refund shortly after receiving it.

32.     The fact that Defendant spent the whole of the Federal Refund and is not in possession of any part of the Federal Refund is evidenced by the fact that Defendant did not schedule the Federal Refund as an asset in the Present Bankruptcy Case (as defined below).

33.     On October 8, 2013, after Defendant failed to make her Chapter 13 plan payments, spent the Federal Refund, and failed to contribute the appropriate portion of the Federal Refund to her Chapter 13 plan, the court dismissed the 2012 Bankruptcy Case for non-payment.

34.     Prior to filing the 2012 Bankruptcy Case, Defendant knew that she could not use, spend, convert, conceal, or withhold tax refunds that were part of a confirmed Chapter 13 plan. Defendant has such a knowledge based on her prior tax filing and involvement in several Chapter 13 bankruptcy cases.

35.     Prior to filing the 2012 Bankruptcy Case, Defendant was well-versed in bankruptcy laws as a result of her prior bankruptcy filings.

36.     Prior to filing the 2012 Bankruptcy Case, Defendant was well aware of a debtor's responsibilities in filing a Chapter 7 or Chapter 13 bankruptcy case.

37.     Prior to filing the 2012 Bankruptcy Case, Defendant was well aware of the consequences of not complying with a court order, a debtor's duties under the bankruptcy code, and a order confirming a Chapter 13 plan.

38.     Prior to receiving and spending the Federal Refund, Defendant knew that she was to turnover the Federal Refund to her Chapter 13 trustee and that she was not allowed to spent the Federal Refund.

39.     Notwithstanding Defendant's knowledge that she could not use, spend, convert, conceal, or withhold the Federal Refund that was part of her confirmed Chapter 13 plan, Defendant purposefully and intentionally spent the Federal Refund on personal, non-exempt items.

40.     Based on Defendant's prior bankruptcy filings and knowledge of the bankruptcy laws, Defendant's act of spending the Federal Refund in contravention of her Chapter 13 plan was done with the intent to hinder, delay, or defraud creditors.

41.     Defendant's prior bankruptcy filings evince Defendant's intent to hinder, delay, and defraud her creditors at all times.

42.     Defendant' prior bankruptcy filings, including the filing a multiple bankruptcies at the same time, evinces that Debtor had the intent to hinder, delay, or defraud her creditors when she spent the Federal Refund.

43.     Defendant knew that if she spent the Federal Refund the 2012 Bankruptcy Case would be dismissed because it had happened in other bankruptcy cases Defendant had filed.

44.     Defendant filed the present Chapter 7 bankruptcy case on October 21, 2013, thirteen (13) days after the dismissal of the 2012 Bankruptcy Case.

45.     On October 21, 2013, Defendant commenced this bankruptcy case by filing a voluntary petition for relief under Chapter 7 of the bankruptcy code (the "Present Bankruptcy Case").

46.     On October 21, 2013, Plaintiff was appointed as the interim trustee of Defendant's Chapter 7 bankruptcy estate in the Present Bankruptcy Case.

47.     Since 1993, Defendant has filed, jointly or individually, nine (9) bankruptcy cases.

48.     Prior to filing the Present Bankruptcy Case, Defendant was well-versed in bankruptcy laws as a result of her prior bankruptcy filings.

### FIRST CAUSE OF ACTION
*11 U.S.C. §727(a)(2)(A)*

49.     Pursuant to Federal Rule of Civil Procedure 10(c), as made applicable in adversary proceedings by Federal Rule of Bankruptcy Procedure 7010, Plaintiff incorporates by reference paragraphs one (1) through forty-eight (48) of this Complaint as if fully set forth herein.

50.     Defendant, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody or property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed property of the Debtor, within one year before the date of filing the Present Bankruptcy Case.

51.     Accordingly, Defendant should be denied a discharge with prejudice under §727(a)(2)(A) of the Bankruptcy Code.

### CLAIMS FOR RELIEF

**WHEREFORE**, based on the foregoing, Plaintiff requests relief and remedy against Defendant as follows:

A.      An appropriate judgment or order denying Defendant a discharge with prejudice

under §727(a)(2)(A) of the Bankruptcy Code.

B.      Such other relief and remedy as deemed appropriate by the Court.

DATED this 17th day of September, 2014.

MᴄKᴀʏ, Bᴜʀᴛᴏɴ & Tʜᴜʀᴍᴀɴ, P.C.


_____/s/ Mark C. Rose_____
Stephen W. Rupp
Mark C. Rose
*Attorneys for Trustee Stephen W. Rupp*

# EXHIBIT A

# CHAPTER 13 MODEL PLAN

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH

In re  **Teresa Lynn Pearson**

CASE NO.  **12-33772**
CHAPTER 13

SSN:

**xxx-xx-0675**

## CHAPTER 13 PLAN
*(for cases filed on or after July 1, 2012)*
**MOTION TO VALUE COLLATERAL AND TO AVOID LIENS UNDER 11 U.S.C. §506**

*[Delete reference to motion(s) if you are not valuing collateral or avoiding liens]*

Original Plan ☒       Amended Plan ☐       Modified Plan ☐       Dated: **October 30, 2012**

**CREDITORS, YOUR RIGHTS WILL BE AFFECTED.** You should review this Plan and any motion herein and discuss it with your attorney. If you disagree with the terms herein, you must file with the bankruptcy court a written objection before the deadline stated in the *Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines*. In the absence of a timely written objection, the court may grant the requested relief and confirm the Plan without further notice or hearing.

1.  **PLAN PAYMENTS.**

    (a)  Fixed Monthly Payment: Debtors shall pay $ __412.00__ per month to the Chapter 13 Trustee for __36__ months until completion of the Plan. Such payments are due on the 25th day of each month.

    (b)  Step Payments: Debtors shall pay $____ per month to the Chapter 13 Trustee for ____ months with payments changing thereafter to $____ until completion of the Plan. Such payments are due on the 25th day of each month.

    (c)  Contribution of Tax Refunds: for the next three tax years of __2012, 2013, and 2014__, the Debtors shall pay into the Plan yearly state and federal tax refunds that, when combined, exceed $1,000 or $2,000 if allowed under applicable law (see section 10).

2.  **APPLICABLE COMMITMENT PERIOD.** Pursuant to §1325(b)(4), as calculated under Part II of Form 22C, the Applicable Commitment Period for this case is ☒ 3 years or ☐ 5 years. Therefore, Plan payments shall be made for the following period:

    ☒  Not less than 36 months but extended as necessary for no more than 60 months to complete the required Trustee distributions under the Plan;

3.  **RETURN TO ALLOWED NONPRIORITY UNSECURED CLAIMS.** Unless this is a 100% Plan, the amount to be distributed on such claims shall be the greater of the amount set forth below, or the pro rata distribution, if any, resulting from the Plan Payment multiplied by the Applicable Commitment Period of section 2 plus all tax refunds required under subsection 1(b). *[select one option and delete the others]*.

    Pot Plan: Not less than $ __405.00__ to be distributed pro rata among allowed nonpriority unsecured claims.

4.  **TRUSTEE'S PERCENTAGE FEE.** The trustee shall collect the statutory fee of 28 U.S.C. § 586(e) for any disbursements actually or constructively made by the Trustee under the Plan or pursuant to the Bankruptcy Code, the Local Rules, or a court order.

5.  **ATTORNEY FEES.** Counsel for Debtors requests an award of attorney fees and costs in the amount of ☐ $3,000, ☒ $3,250, ☐ $3,500 *[select only one]*. Counsel may request additional fees by complying with the notice and hearing requirements of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules. The unpaid balance of attorney's fees shall be paid as follows:

☒ Monthly pro rata distributions from available plan payments until paid in full (see subsection 9(b)).

☐ Fixed monthly payments of $_____, accruing with the first payment under the Plan until paid in full (see paragraph 9(b)).

**6.    TREATMENT OF SECURED CLAIMS.**

(a)    <u>Motion To Value Collateral And to Void Liens Under 11 U.S.C. § 506</u>:  **The Debtors move the court to value the collateral in the amount stated in the Debtors' proffered value below.  Unless a timely objection is filed to this motion to value, the court will fix the value of the collateral consistent with the Debtors' proffer without further notice or hearing. A creditor's filing of a proof of claim asserting a value different than the Debtors' proffered value does not constitute an objection to confirmation. If this case is dismissed or converted before the entry of a discharge, creditors impacted by this subsection shall retain their lien to the extent allowed by §1325(a)(5)(B).**  The resulting allowed secured claim of such creditor shall be paid *the lesser of* (1) the value as fixed by an order of the court or (3) the secured amount asserted in the allowed proof of claim, including any subsequent amendments or modifications by court order.  The portion of any such allowed secured claim that exceeds the amount of the allowed secured claim shall be treated as a nonpriority unsecured claim under section 3.

| Creditor | Description of Collateral | Debt Amount Listed on Schedule D | Debtors' Proffer of Collateral Value | Interest Rate | Interest Accrual Date *(see ¶6(h)(3))* | Adequate Protection Payment | No. of Monthly Adequate Protection Payments | Equal Monthly Payment thereafter |
|---|---|---|---|---|---|---|---|---|
| **Money Train Title Loans** | **2000 Volkswagon Jetta** | **$1,220.00** | **$1,500.00** | **4.50%** | **Conf.** | **$12.00** | **9** | **$50.00** |

(b)    <u>Secured Claims Not Subject To 11 U.S.C. § 506</u>:  Pursuant to § 1325(a)(9), the following claims are not subject to "cramdown" under § 506.  The allowed secured claim of such creditor shall be the secured amount listed in the allowed proof of claim, unless modified by an amended claim or court order.

| Creditor | Description of Collateral | Estimated Secured Claim *(proof of claim controls)* | Interest Rate | Interest Accrual Date *(see ¶6(h)(3))* | Adequate Protection Payment | No. of Monthly Adequate Protection Payments | Equal Monthly Payment thereafter |
|---|---|---|---|---|---|---|---|
| **Prestige Financial Services, Inc.** | **2006 Jeep Liberty** | **$14,000.00** | **4.50%** | **Conf.** | **$140.00** | **9** | **$300.00** |

(c)    <u>Secured Tax Claims</u>:  Any allowed secured tax claim filed by a governmental unit shall be paid the secured amount set forth on the proof of claim, unless the Plan specifically modifies the amount of the secured tax claim by setting forth different treatment of the claim in the table below. Secured claims of governmental entities will be paid at the interest rate stated in the proof of claim; or, if no interest rate is stated in the proof of claim, at the estimated statutory rate _____%. Nothing in this subsection shall prohibit the Debtors from filing a timely objection to a deemed-allowed secured tax claim, or prohibit a governmental unit from amending its secured tax claim.

| Governmental Unit | Estimated Secured Claim *(proof of claim controls)* | Estimated Statutory Interest Rate | Interest Accrual Date *(see ¶6(h)(3))* | Adequate Protection Payment | No. of Adequate Protection Payments | Equal Monthly Payment thereafter |
|---|---|---|---|---|---|---|
| **-NONE-** | | | | | | |

(d)    <u>Curing Defaults And Postpetition Payments</u>:  The Trustee shall disburse on allowed arrearage claims, and the Debtors shall make regular postpetition payments directly to these creditors pursuant to the terms of the original contract beginning with the next payment due after the petition date. Postpetition payments made directly by the Debtors to such creditors may change due to an adjustable rate note, escrow requirements, etc., and notices of such payment changes shall be provided to the Debtors. The arrearage claim will be in the amount of the allowed proof of claim, unless modified by an amended claim or court order.

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com    Best Case Bankruptcy

| Creditor | Description of Collateral | Estimated Arrearage *(proof of claim controls)* | Interest Rate *(enter "0%" if no interest is to be paid)* | Equal Monthly Payment *(if no equal monthly payment, leave blank)* | Equal Monthly Payment Start Date |
|---|---|---|---|---|---|
| **-NONE-** | | | | | |

(e)      Surrender of Collateral: The Debtors surrender the following collateral to the secured creditor. Upon entry of the confirmation order, the automatic stay of § 362 and the co-debtor stay of § 1301 are terminated as to such collateral, and the Debtors will immediately make the collateral available for repossession by the creditor. If the surrender is in full satisfaction of the claim, no unsecured deficiency claim will be allowed, and the Trustee shall not disburse on such claim. If the surrender is in partial satisfaction, the creditor will have 180 days from the confirmation hearing date to file an amended claim for an unsecured deficiency or such creditor's claim will be deemed paid in full. If neither full nor partial satisfaction is designated, surrender is deemed in partial satisfaction of the claim.

| Creditor | Collateral to be Surrendered | Effect of Surrender |
|---|---|---|
| **-NONE-** | | |

(f)      Direct Payments By Debtors On Claims Secured by Personal Property: The Debtors will directly make payments to the creditors listed below pursuant to the following conditions: (1) the Debtors will pay the claim without any modifications to the terms of the contract; (2) upon entry of the confirmation order, the automatic stay of § 362 and the co-debtor stay of § 1301 are terminated as to such collateral and claims; (3) the claim will not be discharged; and (4) neither the court nor the Trustee will monitor the Debtors' performance on direct payments to such creditor.

| Creditor | Collateral |
|---|---|
| **-NONE-** | |

(g)      **Motion To Void Liens Under § 522(f): The Debtors move to avoid the following liens because they impair the Debtors' exemption asserted on Schedule C in that there is no non-exempt equity to which any part of the lien may attach. Unless a timely objection is filed as to this motion, such liens shall be avoided upon entry of the confirmation order. The filing of a proof of claim asserting a secured claim with respect to such lien does not constitute an objection.**

| Creditor | Identification of Collateral | Estimated Claim Amount |
|---|---|---|
| **-NONE-** | | |

(h)      Administrative Provisions Regarding Trustee Disbursements on Secured Claims:

(1) Disbursements On Secured Claims. The Trustee shall disburse on secured claims only if all of the following conditions are met: (a) the Plan specifically provides that the Trustee shall disburse on the secured claim; (b) the secured claim is allowed under 11 U.S.C. §§ 502(a) and 506(a), meaning a secured proof of claim has been timely filed, or the claim has been allowed by court order; and (c) there is no pending objection or motion with respect to such proof of claim under Bankruptcy Rules 3007 (objection to claim) or 3012 (motion to value collateral). All disbursements are subject to the Trustee having received payments under the Plan.

(2) Adequate Protection Payments. The Adequate Protection columns in subsections 6(a), 6(b) and 6(c) fix the amount of monthly adequate protection and such payments shall accrue commencing with the first scheduled meeting of creditors under § 341 and continuing on the first day of each month thereafter for the number of months specified in such column. After this time, secured creditors will receive the Equal Monthly Payments set forth in such paragraphs. Pursuant to LBR 2083-1(c), the Trustee may make preconfirmation disbursements of Adequate Protection payments; however, such payments will only be made if a secured proof of claim is filed in compliance with the applicable provisions of Bankruptcy Rules 3001, 3002 and 3004 before the earlier of the entry of an order dismissing or converting the case or the applicable claims bar date. Adequate Protection payments made during the period before interest begins to accrue on such claims shall be applied to reduce the principal balance of such claim, and adequate protection payments made or attributable to the period after interest begins to accrue shall be applied to unpaid principal and interest.

(3) Interest Accrual Date. In the Interest Accrual Date Column above, the designation "C" or "Conf." shall mean interest shall accrue and be paid from the effective date of the confirmation order and the designation "P" or "Pet." shall mean interest shall accrue and be paid from the petition date. If the Interest Accrual Date Column is left blank, interest shall accrue from the effective date of the confirmation order.

(4) Default Interest Rate. If the interest rate column is left blank in subsections 6(a), 6(b) or 6(c), interest shall accrue and be paid at the rate set forth in the proof of claim. If the proof of claim does not specify an interest rate, then interest shall

accrue and be paid at 6% per annum for subsections 6(a) and 6(b). If the interest rate column is left blank in subsection 6(d), no interest shall be paid on the arrearage claim.

**7.** **EXECUTORY CONTRACTS AND UNEXPIRED LEASES:** All executory contracts and unexpired leases are rejected unless specifically listed below, in which case such are assumed under § 365, and the Debtors will directly make postpetition lease or contract payments to the creditors listed below pursuant to the following conditions: (1) the Debtors will make such payments without any modifications to the terms of the contract or lease; (2) upon entry of the confirmation order, the automatic stay of § 362 and the co-debtor stay of § 1301 are terminated as to such leased property and indebtedness; (3) claims arising under the contract or lease will not be discharged; and (4) neither the court nor the Trustee will monitor the Debtors' performance on direct payments to such creditor(s).

| Creditor | Description of Contract or Leased Property |
|----------|-------------------------------------------|
| -NONE-   |                                           |

**8.** **PRIORITY CLAIMS.** Claims entitled to priority under 11 U.S.C. § 507(a), including domestic support obligations and unsecured taxes, will be paid in full. The allowed amount of any priority claim will be the amount in the proof of claim, unless modified by an amended claim or court order. If the Plan provides for interest on nonpriority unsecured claims, such interest shall also be paid on priority claims. The Debtors shall remain current on all postpetition domestic support obligations during the Plan term.

**9.** **PLAN DISTRIBUTIONS.**

(a) <u>Allowance Of Claims</u>. Except as otherwise specified in paragraph 6(a) of the Plan, the amount of all allowed claims to be paid through the Plan shall be determined using the applicable provisions of the Bankruptcy Code and the Bankruptcy Rules. A proof of claim must be timely filed or specifically allowed by an order of the court to receive any disbursements from the Trustee under the Plan.

(b) <u>Order Of Distribution</u>. The Trustee shall collect the percentage fee under section 4 and then pay allowed claims in the following order:

Class 1: Adequate Protection Payments and Equal Monthly Payments under section 6 pursuant to the amounts and timing provided in such section l;

Class 2: Attorney's fees as provided for in section 5 until paid in full;

Class 3: Priority Domestic Support Obligations under § 507(a)(1) until paid in full;

Class 4: Secured Claims paid by the Trustee that are not entitled to Adequate Protection Payments or Equal Monthly Payments until paid in full;

Class 5: Other priority claims until paid in full; then

Class 6: Nonpriority unsecured claims until paid the return required by section 3.

(c) <u>Administrative Provisions Regarding Adequate Protection And Equal Monthly Payments</u>

(i) If monthly Adequate Protection Payments or Equal Monthly Payments are specified on a claim, such monthly payments must be current in that all monthly payments due through the date of distribution shall be paid, but such claim need not be paid in full before distributions can be made to lower-level Classes. After the full payment of allowed attorney's fees, the Trustee may, but is not required to, disburse to creditors with designated Adequate Protection or Equal Monthly Payments amounts greater than such designated payments to facilitate the prompt administration of the case. To the extent there are insufficient funds to make the required Adequate Protection or Equal Monthly Payments to all creditors in a particular class, the Trustee shall make a pro-rata distribution to such class. Unpaid portions of Adequate Protection or Equal Monthly Payments from a prior month will first be brought current before disbursements are made to lower classes, and Adequate Protection Payments will be brought current before disbursements are made on Equal Monthly Payments.

(ii) If no monthly payments are specified on a claim, payments will be paid pro rata within the designated class, and a higher-level Class will be paid in full pursuant to the Plan before distributions will be made to a lower-level Class.

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com
Best Case Bankruptcy

**10.** **CONTRIBUTION OF TAX REFUNDS.** If section 1 of the Plan so requires, the Debtors shall pay into the Plan the net total amount of yearly state and federal tax refunds that exceed $1,000 for each of the tax years identified in such section. On or before April 30 of each applicable tax year, the Debtors shall provide the Trustee with a copy of the first two pages of filed state and federal tax returns. The Debtors shall pay required tax refunds to the Trustee no later than June 30 of each such year. However, the Debtors are not obligated to pay tax overpayments that have been properly offset by a taxing authority. Tax refunds paid into the Plan may reduce the overall Plan term if it is greater than thirty-six months, but in no event shall the amount paid into the Plan be less than thirty-six Plan payments plus all annual tax refunds in excess of $1,000.

**11.** **PLAN MODIFICATION.** With the affirmative consent of the Trustee, and unless a party-in-interest objects, the Debtors may modify the Plan postconfirmation under § 1329, without further notice to creditors, to conform the Plan to the class, status, amount, value or interest rate set forth in a proof of claim (or otherwise asserted by a creditor) so long as such modification does not have a negative impact on any creditor not receiving notice, other than the delay in receiving the first distribution.

**12.** **OTHER PLAN PROVISIONS:**

(a) Any order confirming this Plan shall constitute a binding determination that the Debtors have timely filed all of the information required by 11 U.S.C. § 521(a)(1).

(b) Any Allowed secured claim filed by a taxing authority not otherwise provided for by this plan shall be paid in full at this same distribution level as arrearage claims provided for under paragraph 6(d), with interest at the rate set forth in the proof of claim. Interest will run from the petition filing date. A taxing authority is defined as a governmental entity with statutory authority to levy or lien, through which the governmental entity obtains secured status. This includes, but is not limited to, offices of the State of Utah, the Internal Revenue Service, and Salt Lake County.

(c) If in an applicable tax year the Debtor(s) receive an Earned Income Tax Credit ("EIC") and/or an Additional Child Tax Credit ("ACTC") on their federal tax return, the Debtor(s) may retain up to a maximum of $2,000 in tax refunds for such year based on a combination of the $1,000 allowed above plus the amount of the EIC and/or ACTC credits up to an additional $1,000.00.

(d) Only the Attorney, and not the debtor(s), is certifying to no alterations to the Model Plan Form.

**13.** **CERTIFICATION.** By signing this plan, counsel certifies that this plan does not alter the provisions of this Model Plan Form, except as set forth in section 12 above. Any revisions to the Model Plan Form not set forth in section 12 shall not be effective.

**END OF PLAN**

Signed: **/s/ Teresa Lynn Pearson**　　　　　　　　　　　Dated: **October 30, 2012**
　　　　　**Teresa Lynn Pearson**

Attorney: **/s/ Lee J. Davis**　　　　　　　　　　　　Dated: **October 30, 2012**
　　　　　**Lee J. Davis**

Software Copyright (c) 1996-2012 CCH INCORPORATED - www.bestcase.com　　　　　　　　　　Best Case Bankruptcy

# EXHIBIT B

**The below described is SIGNED.**

Dated: February 20, 2013 _____
R. KIMBALL MOSIER
U.S. Bankruptcy Judge



_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| In re: | Case No. 12-33772 |
|---|---|
| TERESA LYNN PEARSON | Chapter 13 |
| Debtor. | Judge R. Kimball Mosier |
| | (Confirmation Hearing: *01/15/13 at 10:00 AM*) |

### ORDER CONFIRMING DEBTOR'S CHAPTER 13 PLAN

After notice to all parties in interest, and based on the Trustee's recommendation for confirmation, the Court finds that the Plan meets the requirements of 11 U.S.C. §§ 1322[1] and 1325 and hereby ORDERS AS FOLLOWS:

### CONFIRMATION OF THE PLAN

1.     The proposed Chapter 13 plan, as modified by this Order, is confirmed pursuant to § 1325 (hereinafter the "Plan"). Upon the entry of this Order, the effective date of confirmation shall relate back to the date of the confirmation hearing.

2.     Confirmation is not a binding determination that the Plan complies with the 36 to 60-month term limits of § 1322(d). If at any time the Trustee determines that the Plan is not feasible because its term is greater than 60 months, the Trustee may serve a Notice of Non-Compliance on the Debtor and Debtor's counsel. The Debtor will have 30 days from the service of such notice to file either an objection to claims or a motion to modify under § 1329 to bring the Plan into compliance with § 1322(d). If the issue is not resolved within such 30-day period, the Trustee may file a motion to dismiss or to convert.

---

[1] Unless otherwise stated, all statutory references are to 11 U.S.C. § ___.

3.     Confirmation constitutes a binding determination that the Debtor has complied with the requirements of § 521(a)(1), and this case is not subject to automatic dismissal under § 521(i).

### RETURN TO NONPRIORITY UNSECURED CREDITORS

4.  The Plan shall return to nonpriority unsecured creditors the **greater of** the return provided for below <u>or</u> the minimum "Plan Base" calculated as follows: Plan Payments multiplied by the Applicable Commitment Period (36 or 60 months) plus all required contributions of Tax Refunds.

5.  The Debtor shall make the payments described below until no less than $405.00 is disbursed *pro rata* on allowed nonpriority unsecured creditors pursuant to § 1325(b)(1)(B), not to exceed 100% of the total allowed amount of such claims.

### APPLICABLE COMMITMENT PERIOD

6.  Under § 1325(b)(4), the Debtor's Form 22C calculates that this is a below-median case with an Applicable Commitment Period of 36 months, commencing with the first-scheduled meeting of creditors under § 341.  Pursuant to § 1325(b), the Debtor must make no less than 36 payments to the Plan in the amounts set forth below.

### REQUIRED PAYMENTS AND CONTRIBUTIONS TO THE PLAN

7.  <u>Plan Payments</u>: By the 25th day of each month, the Debtor shall make the required Plan payment to the Trustee of $412.00 (hereinafter the "Plan Payments").

a.  <u>Contribution to the Plan of Tax Refunds Over the Next Three Years</u>.  In addition to the monthly Plan Payments required above, the Debtor shall also pay into the plan the total amount of yearly state and federal tax refunds that in the aggregate exceed $1,000.  If such tax refund includes amounts from the Earned Income Tax Credit (EITC) and/or the Additional Child Tax Credit (ACTC), Debtor may retain up to a maximum of $2,000 of the tax refund based on the following formula: the first $1,000 as provided above, plus the combined amount of the EIC and ACTC up to an additional $1,000 (maximum retained tax refund cannot exceed $2,000) (hereinafter "Tax Refunds").  However, the Debtor is <u>not</u> obligated to pay into the Plan tax refunds that have been properly offset by a taxing authority.  This requirement applies to all tax refunds that the

Debtor is entitled to receive during the three-year period starting with the petition date (e.g., tax returns for tax years 2012 through 2014), subject to the following conditions:

(1)    Pursuant to § 521(f)(1), the Trustee's hereby requests copies of the first two pages of the Debtor's state and federal tax returns, with such copies to be provided on or before April 30th of each year that falls within this three-year period.  Failure to comply with this deadline will result in the Trustee filing a Motion to Dismiss.

(2)    The required Tax Refund contribution, as calculated above, shall be paid into the Chapter 13 plan not later than June 30th of that year.  Failure to comply with this deadline will result in the Trustee filing a Motion to Dismiss.

(3)    Tax Refunds paid into the plan may reduce the overall plan term if it is greater than thirty-six (36) months, but in no event shall the amount paid into the plan be less than thirty-six (36) plan payments plus all Tax Refunds required to be paid into the plan pursuant to the terms set forth above.

(4)    If, after the completion of the Claims Review Process, the return to nonpriority unsecured creditors as set forth herein is the equivalent of a 100% return to such creditors, then the Trustee will have the discretion to issue a letter excusing the Debtor from compliance with this section of the confirmation order.

8.    If during the term of the plan the Debtor files or amends tax returns for a prepetition tax year, the Debtor must provide the Trustee with the first two (2) pages of the federal and state tax returns within fourteen (14) days of their filing with the applicable taxing authority. Furthermore, any tax refunds must be paid to the Trustee within 7 days of the Debtor's receipt of the tax refund.

9.    Within 30 days after receipt of the tax returns, the Trustee will calculate whether the best-interest-of-creditors test of § 1325(a)(4) requires a greater return to unsecured creditors and inform the Debtor and debtors' counsel if the plan must be modified.  The Debtor will then have thirty (30) days to file a motion to modify the plan to provide for the return required by § 1325(a)(4) .  Where possible, the Trustee will work with debtors' counsel to submit a stipulated

order modifying the plan.  If the Debtor fails to file such a motion to modify, the Trustee will move for dismissal.

10. All Plan Payments, Tax Refunds, or other monetary contributions made by the Debtor to the Plan are hereinafter referred to as the "Plan Contributions."

### CLASSIFICATION AND TREATMENT OF CLAIMS

11. <u>Trustee Fee</u>:  The Trustee is allowed the commission authorized by 28 U.S.C. § 586. Any reference in the Plan to the percentage of such commission is an estimate only, and the Trustee's commission on each disbursement will be in the applicable amount fixed by the United States Attorney General.

12. <u>Attorney's Fees</u>: Debtor's counsel is awarded fees and costs in the total amount of $3,250.00 as an administrative claim under § 503(b).  Pursuant to the Bankruptcy Rule 2016 Statement filed in this case, counsel received a prepetition retainer of $0.00; therefore, the balance of $3,250.00 will be paid through the Plan.  This allowance of fees includes time for counsel to comply with the requirements of the Claims Review Process, as set forth below, but it does not limit counsel's option to seek additional fees after notice and a hearing on a fee application filed with the Court.

13. <u>Adequate Protection Payments</u>:  Adequate protection payments under § 1326(a)(1)(C), are allowed in such amount as stated in the Plan or fixed pursuant to a Court order or stipulation between the parties.

14. <u>Secured Claims</u>:  If a secured claim is provided for in the Plan or if a secured proof of claim is filed before the deadline to object to confirmation, the Trustee will set up a reserved, secured claim based on the greater of the Plan terms or the proof of claim.  The Trustee shall disburse on secured claims only if <u>all</u> of the following conditions are met: (a) the Plan specifically provides that the Trustee shall disburse on the secured claim; (b) the secured claim is allowed under 11 U.S.C. §§ 502(a) and 506(a), meaning a secured proof of claim has been timely filed, or the claim has been allowed by court order; and (c) there is no pending objection or motion with respect to such  proof of claim under Bankruptcy Rules 3007 (objection to claim) or 3012 (motion to value collateral).  All disbursements are subject to the Trustee having received monthly Plan Contributions.  If the Plan provides for a secured claim, but such creditor files an

unsecured claim, and such unsecured claim is deemed allowed under § 502(a) as of the completion of the Claim's Review Process (see below), the Trustee shall at that time remove the reserved, secured status of this claim and shall administer such claim as a nonpriority unsecured claim pursuant to the terms of the Plan.

15. <u>Mortgage Arrearage Claims</u>.

a. If a proof of claim is filed asserting a mortgage arrearage, but such claim is not provided for in the confirmed Plan, the Trustee will set up a reserve claim consistent with the proof of claim. The Plan must be modified under § 1329 to provide for the payment of the arrearage claim no later than 30 days after the filing of the Trustee's Report of Claims, or the Trustee will remove the reserve claim and no disbursements will be made on the filed arrearage claim. If the Plan is timely modified to authorize payment of the mortgage arrearage claim, the Trustee will disburse on such claim pursuant to the creditor name and address and the amount of the arrearage in the proof of claim.

b. The Trustee will cease any disbursements on a mortgage arrearage claim when an objection is filed to such proof of claim. The Trustee will likewise modify disbursements on a mortgage arrearage claim provided for in the Plan if such proof of claim is amended otherwise modified by Court order.

16. <u>Secured Tax Claims</u>: Any allowed secured tax claim filed by a governmental unit shall be paid the secured amount as set forth on the proof of claim, unless the Debtor's Plan specifically modifies the amount of the secured tax claim by setting forth different treatment of the claim in paragraph 6(c) of the Debtor's Chapter 13 Plan. Secured claims of governmental entities will be paid at the interest rate stated in the proof of claim, or, if no interest rate is stated in the proof of claim, at the estimated statutory rate. Nothing in this paragraph shall prohibit the Debtor from filing a timely objection to a deemed-allowed secured tax claim, or prohibit a governmental unit from amending its secured tax claim.

17. <u>Rulings on Secured Claims</u>.   The Court hereby makes the following rulings on secured claims provided for by the Plan.

a.   <u>Secured Claim of Prestige Financial (Claim No. 1 and its amendments)</u>.   The secured claim of Prestige Financial qualifies under § 1325(a)(9) as a claim that is not subject to modification under § 506.   Therefore, such claim shall be paid as fully secured in the total amount allowed in the proof of claim, an amended proof of claim, or an order modifying such claim.   The interest rate on such claim under § 1325(a)(5)(B)(ii) shall be 4.5%.

b.   <u>Secured Claim of Money Train (Claim No. 9 and its amendments)</u>.   The Plan provides for the valuation of the collateral securing the claim of Money Train and proposes an interest rate for such secured claim.   Because no timely objection was filed to this proposed plan treatment, the collateral of Money Train is valued at $1,500.00 and the resulting secured claim will accrue interest at the rate of 4.5% per annum.   The Trustee will set up a reserve, secured claim based on these figures, and after an allowed proof of claim is filed, the Trustee will disburse on such secured claim pursuant to the above-stated rulings on value and interest rate.   The unsecured balance of such claim will be fixed based on any filed and allowed proof of claim or by subsequent order of the Court.

18. <u>Domestic Support Obligations</u>:   Allowed, unsecured domestic support obligation claims entitled to priority under § 507(a)(1)(A) and (B) shall be paid in full.

19. <u>Tax Claims</u>:

a.   For purposes of confirmation, Claim No. 7 filed by the Utah State Tax Commission ("USTC") is allowed as a secured claim in the amount of $217.88 together with interest thereon at the rate of 2% per annum, a priority unsecured claim in the amount of $922.00 and a nonpriority unsecured claim in the amount of $180.00.   The Trustee will hold this claim in reserve and not make any disbursement on this claim until either the USTC files a claim amending Claim No. 7 or the Court enters an order affecting Claim No. 7.   The USTC is allowed 120 days from the date of the final confirmation hearing to review the Debtor's tax returns and to file an amended claim if necessary.   If the Utah State Tax Commission does not timely amend its claim, it shall be

allowed in the amounts set forth above, and the Trustee shall disburse funds on the USTC claim.  If the USTC timely amends its claim, it shall serve a copy of the amended claim on the Trustee, the Debtor and counsel.  If the amended claim asserts any additional tax liabilities, the Debtor shall, within thirty (30) days after service of the amended claim, file a motion to modify the Plan to provide for payment of such liabilities and notice such motion for a hearing.  If a notice and motion to modify the Plan are not timely filed, the case may be dismissed without further notice or hearing upon the filing with the Court of a declaration of non-compliance by the USTC or the Trustee.

    b.  If any additional tax liability is determined to be due after confirmation of the Plan, the Debtor may elect to modify the Plan under § 1329 to include payment of such liability.

20. <u>Nondischargeable Student Loan Claims</u>.  Allowed claims for student loan obligations shall be treated as nonpriority unsecured claims.  To the extent such claims are nondischargeable under 11 U.S.C. §§ 1328(a)(2) and 523(a)(8), the Debtor shall remain liable on such claims after completion of the Plan.

21. <u>Conditions for Disbursements on Unsecured Claims</u>.  Disbursements on allowed priority and nonpriority unsecured claims may commence within 45 days after the filing of the Trustee's Report of Claims referenced herein, subject to the following: (a) there are no unresolved objections to the Trustee's Report of Claims; (b) the unsecured claim is entitled to a disbursement under the Plan and priority provisions set forth herein; and (c) funds are available for the Trustee to make a distribution.

## DISTRIBUTIONS ON ALLOWED CLAIMS

22. The Trustee will disburse all contributions to the Plan, include Plan Payments and Tax Refunds, pursuant to the following levels and priority of distribution:

    <u>Trustee's Fee</u>.  The Trustee shall collect the percentage fee on each disbursement in this case pursuant to § 1326(b)(2) and the applicable percentage set by the U.S. Trustee; then

    <u>Class 1</u>:  Monthly attorney fee payments provided under the Plan, if any, and Adequate Protection Payments and Equal Monthly Payments pursuant to the amounts and

timing provided in the confirmed Plan until each required monthly payment has been paid in full;

Class 2:  Pro rata attorney's fees provided under paragraph 5, if any, until paid in full;

Class 3:  Priority Domestic Support Obligations under § 507(a)(1) until paid in full;

Class 4:  Secured Claims paid by the Trustee that are not entitled to Adequate Protection Payments or Equal Monthly Payments until paid in full;

Class 5:  Other priority claims until paid in full; then

Class 6:  Nonpriority unsecured claims until paid the return provided in the Plan.

a.  Administrative Provisions Regarding Adequate Protection And Equal Monthly Payments:

(1)     If monthly Adequate Protection Payments or Equal Monthly Payments are specified on a claim, such monthly payments must be current in that all monthly payments due through the date of distribution shall be paid, but such claim need not be paid in full before distributions can be made to lower-level Classes.  After the full payment of allowed attorney's fees, the Trustee may, but is not required to, disburse to creditors with designated Adequate Protection or Equal Monthly Payments amounts greater than such designated payments to facilitate the prompt administration of the case.   To the extent there are insufficient funds to make the required Adequate Protection or Equal Monthly Payments to all creditors in a particular class, the Trustee shall make a pro-rata distribution to such class.  Unpaid portions of Adequate Protection or Equal Monthly Payments from a prior month will first be brought current before disbursements are made to lower classes, and Adequate Protection Payments will be brought current before disbursements are made on Equal Monthly Payments.

(2)     If no monthly payments are specified on a claim, payments will be paid pro rata within the designated class, and a higher-level Class will be paid in full pursuant to the Plan before distributions will be made to a lower-level Class.

## CLAIMS REVIEW PROCESS

23. <u>Claims Review Process</u>.  Within 60 days following the expiration of the bar date for governmental units to file claims under Bankruptcy Rule 3002(c)(1) – generally 180 days after the petition date – (hereinafter  the "Governmental Bar Date"), the Debtor shall file with the Court and serve on the Trustee a declaration that all claims have been reviewed and that any appropriate objections have been filed and noticed for a hearing.

24. <u>Trustee's Report of Claims</u>.  Within approximately 120 days following the expiration of the Governmental Bar Date, or at such time as all claim issues are resolved, the Trustee may file and serve on all parties-in-interest a Trustee's Report of Claims that will include a list of claims filed in the case, the amount of such claims, and their treatment under the confirmed Plan (e.g., secured, priority, allowed, disallowed, etc.).  If no objection is filed to the Trustee's Report of Claims within 30 days after service thereof, it shall be deemed final and incorporated into this Order.  If a written objection to the Trustee's Report of Claims or an objection to a claim is filed within such 30-day period, the Trustee will file and serve an Amended Trustee's Report of Claims within 30 days after resolution of the objections or motions.  Any such written objection to the Trustee's Report of Claims must be noticed for a hearing to be held within 30 days after its filing.  If no written objection to the Amended Trustee's Report of Claims is filed within 30 days after service, it shall be deemed final and will be incorporated into the confirmation order.

25. <u>Untimely Claims</u>.  Unless otherwise ordered by the Court, the Trustee will not disburse on any claim that is filed after the applicable deadline of Bankruptcy Rule 3002.

## ADMINISTRATIVE PROVISIONS

26. If the Trustee has filed an objection to an exemption claimed on Schedule C, and such exemption is not specifically ruled on by the Court in connection with confirmation of the Plan, then the Trustee's objection shall remain pending, including for purposes of any motion to modify under § 1329 or in connection with any conversion to another Chapter under the Bankruptcy Code.

27. The Trustee is granted authority to set procedures for making disbursements under the Plan.  Such disbursements shall be made in a manner consistent with the Bankruptcy Code, the

Federal Rules of Bankruptcy Procedure and the Trustee's Report of Claims as incorporated into this Order pursuant the provisions set forth above.

28. If this case is dismissed or converted to another Chapter under the Bankruptcy Code, any Plan Contributions received by the Trustee prior to the entry of an order of conversion or dismissal shall be paid to creditors pursuant to the Plan, while payments received after the entry of such order shall be refunded to the Debtor. In making any final disbursement under this paragraph, the Trustee is hereby authorized to decline to disburse funds on any unsettled, contingent, disputed, duplicate, unliquidated, late-filed or otherwise legally insufficient claim, including where a disbursement check on a claim has been returned to the Trustee as undeliverable by the United States Mail.

29. In the event an error is made in disbursements to creditors, the Trustee may, without prior notice to parties-in-interest, rectify such errors by any legal means including offsets and surcharges against future disbursements in this case owing to the creditor who received the erroneous disbursement.

30. During the term of the Plan, the Debtor shall not sell or transfer property of the estate or collateral provided for in the Plan without a Court order under § 363 and prior written notice to the Trustee. A creditor shall not accept any insurance or sale proceeds from collateral provided for in the Plan unless an amended proof of claim is filed with the Court and prior written notice thereof is provided to the Trustee. If the Plan provides that the Trustee will make disbursements on a specific claim, and that claim is paid from another source, the Trustee shall nonetheless be entitled to the statutory commission on such amount as would have been disbursed by the Trustee under the Plan. At confirmation, property of the estate vests pursuant to the terms of the Plan and § 1327.

31. During the term of the Plan, the Debtor shall not incur any new material debt without a Court order under § 364.

32. If after confirmation of the Plan, a creditor amends its timely, allowed proof of claim, the Trustee shall give notice to counsel whether such amended proof of claim, if allowed, causes the Plan to be unfeasible. If the amended claim does not render the Plan unfeasible, and if the Trustee does not receive an objection from Debtor's counsel within ten (10) days after service of

such notice, the Trustee shall pay such claim in the amended amount.  If the amended claim renders the Plan unfeasible, the Trustee may move to dismiss the case or to modify the Plan.

33. The Trustee is hereby authorized to exercise discretion in administering this case including, but not limited to, out-of-court resolutions of postconfirmation defaults arising from the Debtor's failure to make timely Plan Contributions.

## END OF DOCUMENT



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Order was served by ECF (as indicated below) or addressed to the following persons and deposited in the U.S. Mail, first-class postage prepaid, on the 13th day of February 2013. Pursuant to Rule 9021-(c), Local Rules of Practice of the United States Bankruptcy Court for the District of Utah, persons who appeared at the hearing, and who have not otherwise approved the Order, shall have eight (8) days from the date of service to file an objection to the form of the Order. If an objection is not timely filed, the Order shall be deemed approved, and the Court may enter the Order.

LEE J. DAVIS, ESQ.
ECF NOTIFICATION

UTAH STATE TAX COMMISION
ECF NOTIFICATION

_____/s/_____
Office Chapter 13 Trustee

### COURT SERVICE LIST

KEVIN R. ANDERSON
STANDING CHAPTER 13 TRUSTEE
ECF NOTIFICATION

LEE J. DAVIS, ESQ.
ECF NOTIFICATION

TERESA LYNN PEARSON
6675 SOUTH 3300 WEST
WEST JORDAN, UT 84084

UTAH STATE TAX COMMISION
ECF NOTIFICATION

MONEY TRAIN
7129 S. STATE ST.
MIDVALE, UT 84047

PRESTIGE FINANCIAL
PO BOX 26707
SALT LAKE CITY, UT 84126