**The below described is SIGNED.**

**Dated: February 19, 2015**

_____
**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**



# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br>**TERESA LYNN PEARSON,**<br>Debtor. | Bankruptcy Number: 13-31960<br><br>Chapter 7 |
| **STEPHEN W. RUPP, as Chapter 7 Trustee,**<br>Plaintiff,<br>vs.<br>**TERESA LYNN PEARSON,**<br>Defendant. | Adversary Proceeding No. 14-2020<br><br>Judge R. Kimball Mosier |

### MEMORANDUM DECISION

Stephen W. Rupp, the Chapter 7 Trustee and Plaintiff in the above-captioned adversary proceeding, filed a Motion for Entry of Default Judgment, which sought a default judgment against the Defendant, Teresa Lynn Pearson, on the Plaintiff's amended complaint. The Plaintiff had sought default judgment previously on his original complaint, which the Court denied by order entered on

July 3, 2014. The original complaint requested that the Defendant's discharge be denied pursuant to 11 U.S.C. § 727(a)(2)(A), (a)(2)(B), (a)(4)(C), (a)(6)(A), (a)(7), and (d)(2).[1] The amended complaint retained only the cause of action under § 727(a)(2)(A).

The Court conducted a hearing on the motion on November 25, 2014, at which Mark C. Rose appeared on the Plaintiff's behalf. The Defendant did not appear or file a response to the motion. Following the Plaintiff's argument, the Court took the matter under advisement. On December 16, 2014, the Court issued an order pursuant to Federal Rule of Bankruptcy Procedure 7055(b)(2)(C), requiring the Plaintiff to appear on January 28, 2015 to address the sufficiency of the allegations in the amended complaint and address why the Court should not exercise its discretion to dismiss the amended complaint. At that hearing, Mark C. Rose appeared on behalf of the Plaintiff, who was also present. Lee J. Davis appeared on behalf of the Defendant. After carefully considering the Plaintiff's motion and oral argument, and after conducting its own independent research of applicable law, the Court hereby issues the following Memorandum Decision.

## I.  JURISDICTION

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and § 157(a). The Plaintiff's amended complaint seeks to deny the Defendant's discharge, which makes this a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is proper under 28 U.S.C. § 1409.

## II.  ANALYSIS

The process to obtain a default judgment proceeds through two steps. First, Federal Rule of Civil Procedure 55(a) requires that the party moving for default judgment show by affidavit or otherwise that the party "against whom a judgment for affirmative relief is sought has failed to plead

---

[1] All subsequent statutory references are to Title 11 of the United States Code unless otherwise indicated.

or otherwise defend." In this case, the Plaintiff has completed the first step, and the Clerk of the Court has entered the Defendant's default certificate. Second, once the Clerk has entered the opposing party's default certificate, the moving party must then apply to the Court for a default judgment under Rule 55(b)(2). *See Williams v. Smithson*, No. 95-7019, 1995 WL 365988, at *1 (10th Cir. June 20, 1995) (unpublished). The Plaintiff's motion concerns that second step, and since the Plaintiff's claim is not for a sum certain, Rule 55(b)(2) applies.

Default judgments are not favored by the courts. *Katzson Bros. v. U.S. EPA*, 839 F.2d 1396, 1399 (10th Cir. 1988). "'However, a workable system of justice requires that litigants not be free to appear at their pleasure.'" *Ruplinger v. Rains (In re Rains)*, 946 F.2d 731, 733 (10th Cir. 1991) (quoting *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444–45 (10th Cir. 1983)). "The default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party." *Id.* at 732 (citation and internal quotation marks omitted). "Decisions to enter judgment by default are committed to the district court's sound discretion." *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771 (10th Cir. 1997).

Under Federal Rule of Civil Procedure 8(b)(6), "[a]n allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied." Federal Rule of Bankruptcy Procedure 7012(a) requires that, if a complaint is duly served, the defendant must serve an answer within 30 days after the summons is issued. Here, the summons and amended complaint have been duly served upon the Defendant and her attorney of record in the underlying bankruptcy case, and the Defendant has not served an answer. Therefore, the Plaintiff's well-pleaded allegations in the amended complaint are deemed admitted.

Nevertheless, entry of a default judgment does not follow as a matter of course when a defendant fails to answer a complaint. "[A] default is . . . merely an admission of the facts cited in the Complaint, which by themselves may or may not be sufficient to establish a defendant's liability. . . . [T]he plaintiff is entitled to a default judgment only if the complaint states a claim for relief." *Jackson v. Correctional Corp. of Am.*, 564 F. Supp. 2d 22, 26–27 (D.D.C. 2008) (citations and internal quotation marks omitted); *see also GMAC Commercial Mortgage Corp. v. Maitland Hotel Assocs., Ltd.*, 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) ("[T]he Court must find that there is a sufficient basis in the pleadings for the [default] judgment to be entered. A default judgment cannot stand on a complaint that fails to state a claim."). "A request for default judgment may be denied when the complaint is insufficient." *Discover Bank v. Fuentes (In re Fuentes)*, 474 B.R. 497, 500 (Bankr. S.D. Tex. 2012); *see also AT & T Universal Card Servs., Corp. v. Sziel (In re Sziel)*, 206 B.R. 490, 493 (Bankr. N.D. Ill. 1997), *reconsideration denied*, 209 B.R. 712 ("Entry of a judgment of default is discretionary with the trial judge and may be denied where there are insufficient facts to support a cause of action.").

The Plaintiff pleads his sole cause of action under § 727(a)(2)(A). "[D]enial of a debtor's discharge is a harsh sanction." *Carto v. Oakley (In re Oakley)*, 503 B.R. 407, 423 (Bankr. E.D. Pa. 2013). Therefore, due to "the importance of the discharge in bankruptcy, the grounds for denying a discharge as set forth in subsections (1) through (10) of § 727(a) are narrowly construed." *Bank One v. Kallstrom (In re Kallstrom)*, 298 B.R. 753, 758 (B.A.P. 10th Cir. 2003). Nevertheless, "the opportunity for 'a completely unencumbered new beginning' is reserved only for 'the honest but unfortunate debtor.'" *Standiferd v. U.S. Trustee*, 641 F.3d 1209, 1212 (10th Cir. 2011) (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)).

To deny a debtor's discharge under § 727(a)(2)(A), a plaintiff "must show by a preponderance of the evidence that (1) the debtor transferred, removed, concealed, destroyed, or mutilated, (2) property of the [debtor], (3) within one year prior to the bankruptcy filing, (4) with the intent to hinder, delay, or defraud a creditor." *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1293 (10th Cir. 1997). A court must find that the debtor acted with actual intent to defraud creditors. *Mathai v. Warren (In re Warren)*, 512 F.3d 1241, 1249 (10th Cir. 2008) (citation omitted). Constructive intent will not suffice. *Los Alamos Nat'l Bank v. Wreyford (In re Wreyford)*, 505 B.R. 47, 55 (Bankr. D.N.M. 2014). A debtor's actual intent may be "established by circumstantial evidence, or by inferences drawn from a course of conduct." *Warren*, 512 F.3d at 1249 (citation and internal quotation marks omitted).

The conduct that the Plaintiff alleges violates this provision is the Defendant's retention and spending of her 2012 tax refunds. In particular, the Plaintiff alleges as follows: the Defendant, who had filed for bankruptcy seven times previously since 1993, filed a petition for relief under Chapter 13 of the Bankruptcy Code on October 30, 2012. She proposed a Chapter 13 plan, which was subsequently confirmed by order entered on February 20, 2013. That order required the Defendant to contribute the applicable portion of her 2012 tax refunds to the plan. In April 2013, the Defendant received a 2012 federal tax refund in the amount of $4,829.00, but did not contribute any portion of it to the plan. Instead, she converted the refund to her own use and benefit by spending all of it on personal, non-exempt items, which the Plaintiff alleges was done with the intent to hinder, delay, or defraud creditors. The Defendant's Chapter 13 case was subsequently dismissed on October 8, 2013 for failure to make plan payments. Thirteen days later, on October 21, 2013, the Defendant filed the present Chapter 7 bankruptcy case.

The Court concludes that these allegations are sufficient to support the second and third elements of a cause of action under § 727(a)(2)(A). The Defendant had an interest in the 2012 federal tax refund, and the alleged conduct occurred within one year prior to the date the Defendant filed her present Chapter 7 case. Whether such allegations satisfy the first and fourth elements is not as clear, however.

Regarding the first element, the Plaintiff alleges that the Defendant "knowingly and willing spent the whole of the [2012 federal tax refund] on personal, non-exempt items for her sole use and benefit." Although not alleged in the amended complaint, the Plaintiff elaborated at the January 28 hearing that the Defendant testified at her § 341 meeting that she spent her 2012 federal tax refund on living expenses, bills, and her children. The Plaintiff argues that such spending constitutes a transfer for purposes of § 727(a)(2)(A).

The term "transfer" is specifically defined in the Bankruptcy Code to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or an interest in property." § 101(54)(D). "Although the legislative history offers no guidance in interpreting 'transfer' in the context of Section 727(a)(2)(A), the legislative history of Section 101(54) . . . explains that 'the definition of transfer is as broad as possible.'" *Martin v. Bajgar (In re Bajgar)*, 104 F.3d 495, 498 (1st Cir. 1997) (quoting S. Rep. No. 95-989, at 27 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5813). Placing the quote from *Bajgar* in context, the broader excerpt from the Senate Report reads:

> A transfer is a disposition of an interest in property. The definition of transfer is as broad as possible. Many of the potentially limiting words in current law are deleted, and the language is simplified. Under this definition, any transfer of an interest in property is a transfer, including a transfer of possession, custody, or control even if there is no transfer of title, because possession, custody, and control are interests in property.

S. Rep. No. 95-989, at 27. Recognizing the wide circumference of § 101(54) and the import of that provision's legislative history, other courts have noted that the definition of "transfer" is "*extremely broad.*" *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1282 (9th Cir. 1996); *see also Barnhill v. Johnson*, 503 U.S. 393, 400 (1992) ("We acknowledge that § 101(54) adopts an expansive definition of transfer.").

While some § 727(a)(2)(A) actions involve real property transfers, "[p]roperty that can be transferred for the purposes of § 727(a)(2)(A) includes money belonging to the debtor." *Deangelis v. Rose (In re Rose)*, 425 B.R. 145, 151 (Bankr. M.D. Pa. 2010). Spending such money on purchases as innocuous as ordinary living expenses and bills falls under the broad umbrella of a transfer. *See Quicken Loans, Inc. v. Splawn (In re Splawn)*, 376 B.R. 747, 756–57 (Bankr. D.N.M. 2007) (debtors' use of proceeds obtained from the sale of real property to pay "personal and household expenses, including . . . significant credit card balances," constitutes a transfer under § 727(a)(2)(A)); *Silver Care Ctr. v. Parks (In re Parks)*, Adv. No. 05-2774, 2007 WL 2033380, at *8 (Bankr. D.N.J. July 10, 2007) ("The definition of 'transfer' is expansive, and would certainly encompass the debtor's act of spending the funds she received for personal expenses."). Given the breadth that "transfer" has been accorded under the Bankruptcy Code, the Court concludes that using money to pay one's bills and living expenses constitutes a transfer for purposes of § 727(a)(2)(A). Therefore, the Plaintiff's amended complaint pleads sufficient facts to support the first element of a cause of action under § 727(a)(2)(A).

The remaining question is whether the Defendant made the alleged transfers with the intent to hinder, delay, or defraud a creditor or an officer of the estate. Because a defendant rarely "lays bare his or her subjective intent," *Warren*, 512 F.3d at 1249, plaintiffs typically attempt to show the

requisite intent through circumstantial evidence or inferences drawn from a course of conduct. Here, the Plaintiff's amended complaint has chosen this common tack. Specifically, the amended complaint alleges that the Defendant has gained knowledge of bankruptcy laws and a debtor's responsibilities through her prior bankruptcy filings, and that her retention and transfer of the 2012 federal tax refund, despite that knowledge, demonstrates her intent.

When a debtor's fraudulent intent cannot be shown by direct evidence, but rather must be established by circumstantial evidence or inferred through a course of conduct, "[c]ourts typically look for specific indicia of fraud, often referred to as 'badges of fraud,' when analyzing a case under § 727(a)(2)(A)." *Turner v. Keck (In re Keck)*, 363 B.R. 193, 199 (Bankr. D. Kan. 2007). These indicia include:

> (1) concealment of prebankruptcy conversions; (2) conversion of assets immediately before the filing of the bankruptcy petition; (3) gratuitous transfers of property; (4) continued use by the debtor of transferred property; (5) transfers to family members; (6) obtaining credit to purchase exempt property; (7) conversion of property after entry of a large judgment against the debtor; (8) a pattern of sharp dealing by the debtor prior to bankruptcy; (9) insolvency of the debtor resulting from the conversion of the assets; and (10) the monetary value of the assets converted.

*Splawn*, 376 B.R. at 755 (quoting *Compton v. Herrman (In re Herrman)*, 355 B.R. 287, 292 (Bankr. D. Kan. 2006)). Other indicia can include "'the financial condition of the party sought to be charged both before and after the transaction in question; the existence of a pattern or series of transactions after the onset of financial difficulties, or pendency or threat of suits by creditors; and the general chronology of the events and transactions under inquiry.'" *Id.* (quoting *Aweida v. Cooper (In re Cooper)*, 150 B.R. 462, 465 (D. Colo. 1993)). Because cases of this sort "are peculiarly fact specific, . . . the activity in each situation must be viewed individually." *Marine Midland Bus. Loans, Inc. v. Carey (In re Carey)*, 938 F.2d 1073, 1077 (10th Cir. 1991).

The allegations in the Plaintiff's amended complaint implicate few of the badges of fraud. There are no allegations that suggest the Defendant concealed the transfers, that the transfers were made to family members, or that the Defendant engaged in a pattern of sharp dealing. Instead, the most relevant badge of fraud—and the one that dovetails closest with the Plaintiff's amended complaint—appears to be the chronology of events and transactions under inquiry.

At bottom, the Plaintiff's amended complaint consists of three core allegations: (1) the Defendant spent her 2012 federal tax refund; (2) on living expenses, bills, and her children; (3) at a time when she knew she was obligated to turn the refund over to the Chapter 13 Trustee for disbursement to her creditors. The first two allegations fall well short of demonstrating a course of conduct from which the Court can infer the Defendant's fraudulent intent. Spending a tax refund on pre-petition living expenses simply does not evince fraudulent intent. Therefore, the essential allegation is the third; the Plaintiff's amended complaint hinges on the fact that the Defendant's conduct occurred while she was in a previous bankruptcy case.

Even with this allegation, however, the amended complaint does not present a sufficient basis for default judgment to be entered against the Defendant. That the Defendant's conduct took place during her prior Chapter 13 case is insufficient circumstantial evidence from which the Court can infer the requisite intent under § 727(a)(2)(A). It is not the case that every Chapter 13 debtor who retains and spends a tax refund in contravention of a confirmed plan has acted in such a way that merits denial of discharge in a subsequently filed Chapter 7 case. The outcome of a case like this one turns on its specific facts, and in this case the Plaintiff has alleged that the Defendant spent her tax refund on living expenses, bills, and her children while in a prior Chapter 13 case. Such an allegation is insufficient to establish the Defendant's fraudulent intent as a matter of law.

### III. CONCLUSION

The Plaintiff has alleged facts that support the first, second, and third elements of a cause of action under § 727(a)(2)(A), but the allegations in the amended complaint are inadequate to support the fourth and final element. As a consequence, the Plaintiff's amended complaint fails to state a claim under § 727(a)(2)(A), and the Court concludes that no amendment can cure the defects in the amended complaint such that the Defendant's fraudulent intent could be established. Therefore, the Court will not enter default judgment against the Defendant, but the Court will exercise its discretion to dismiss the Plaintiff's amended complaint. The Court will issue a separate Order in accordance with this Memorandum Decision.

_____END OF DOCUMENT_____

Case 14-02020 Doc 25 Filed 02/19/15 Entered 02/19/15 14:46:17 Desc Main
Document Page 11 of 11

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

      Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

Stephen W. Rupp      rupptrustee@mbt-law.com, UT03@ecfcbis.com
Mark C. Rose           mrose@mbt-law.com, markcroselegal@gmail.com

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

Lee J. Davis
Law Office of Davis & Jones, PC
5663 South Redwood Road, Suite 1
Taylorsville, UT 84123

Teresa Lynn Pearson
9425 South Riverside Drive, #1113
Sandy, UT 84070